[Cite as *State v. Farmer*, 2014-Ohio-3079.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2013-06-097 |
| | : | O P I N I O N |
| - vs - | | 7/14/2014 |
| | : | |
| TYLER D. FARMER, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 13 CRB 00830

Geoffrey A. Modderman, Hamilton City Prosecutor, 345 High Street, Hamilton, Ohio 45011, for plaintiff-appellee

Fred S. Miller, Baden & Jones Bldg., 246 High Street, Hamilton, Ohio 45011, for defendant-appellant

**RINGLAND, P.J.**

{¶ 1} Defendant-appellant, Tyler Farmer, appeals his conviction for cruelty to a companion animal from the Hamilton Municipal Court.

{¶ 2} In March of 2013, Farmer was charged with one count of cruelty to a companion animal in violation of R.C. 959.131(B), a first-degree misdemeanor. Farmer was found guilty of the charge following a bench trial. He was subsequently sentenced to 60 days

in jail, all stayed, two years on probation, a $300 fine and restitution in the amount of $423.50.

{¶ 3} Farmer now appeals that conviction, raising a single assignment of error for review:

{¶ 4} Assignment of Error No. 1:

{¶ 5} THE APPELLANT'S CONVICTION FOR CRUELTY TO ANIMALS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6} Within this assignment of error, Farmer argues that "a court cannot convict someone of knowingly being cruel to his emaciated and dehydrated dog when he at least attempts to feed and water the animal every day; at most, in such circumstances, the person has acted recklessly or negligently, thereby negating the requisite mental intent needed for a conviction."

{¶ 7} In determining whether a conviction is against the manifest weight of the evidence, this court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 32. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. *State v. Bailey*, 12th Dist. Butler No. CA2002-03-057, 2003-Ohio-5280, ¶ 22. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *Id.*

{¶ 8} R.C. 959.131(B) provides that, "no person shall knowingly torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty

- 2 -

against a companion animal." For purposes of R.C. 959.131, "companion animal" means any animal that is kept inside a residential dwelling and any dog or cat regardless of where it is kept excluding livestock or wild animals. R.C. 959.131(A)(1). Pursuant to this section, "cruelty," "torment," and "torture" include every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief. R.C. 1717.01.

{¶ 9} On March 4, 2013, police were contacted by one of Farmer's neighbors, Lourdes Zaiter, who expressed concern for the welfare of Farmer's dog. Zaiter testified that she believed Farmer was in jail at the time and worried that no one was caring for the dog. Zaiter stated that she gave the dog some food, but that she did not believe Farmer was mistreating him.

{¶ 10} Police Officer Melva Baker responded to the residence. She testified that the dog appeared thin, that she, "could [see] its ribs up and down [its] whole body," and that "it appeared that someone hadn't been feeding it." Officer Baker also noted that there were "bits and pieces of some straw and some food laying" on the enclosed porch that was the dog's shelter. Based upon her observations, Officer Baker called for animal control to respond to Farmer's residence.

{¶ 11} Butler County Dog Warden Kurt Merbs responded upon Officer Baker's request. Merbs testified that he had previously investigated the condition of Farmer's dog in January of 2013. Following that investigation, Farmer was warned of the dog's condition and was ordered to take the dog to a veterinarian. At that time, Farmer complied and brought the dog to the Westside Animal Clinic. Dr. Sara Horton, a veterinarian, testified that she examined the dog on January 7, 2013. She stated that the dog was emaciated, dehydrated, had a low grade fever and was covered in fleas and flea dirt. However, she did state that the dog had good color and circulation. Dr. Horton testified that the dog was at least 10 to 15

pounds underweight. She provided the dog with some hydration, medication for acute vomiting, and a de-wormer. However, Dr. Horton did not believe the dog's emaciated condition could be caused by parasites. Dr. Horton recommended hospitalization and treatment for dehydration, but Farmer declined, citing financial concerns.

{¶ 12} Returning to the present investigation, Merbs testified that the dog appeared "skinny," and "[m]aybe a little bit more thin" than when he had investigated the dog in January. In describing the enclosed porch, Merbs found that all the windows were open and the screens had been ripped out. He noted remnants of straw scattered around, a bowl with no water in it, and a small piece of foam upon which the dog was attempting to curl up. While Merbs did not describe the temperatures that day as freezing, he did state that it was "really cold."

{¶ 13} The dog was then taken into custody and brought to the Animal Friend's Human Society. Upon arrival at the humane society, the dog weighed 45.7 pounds. After the dog was provided water, Merbs testified that the dog drank the water for four consecutive minutes until it was taken away. The dog was then provided with food, which was eaten aggressively until it was gone.

{¶ 14} Dr. Jayme Haeussler, a veterinarian, testified as to the dog's condition upon arrival at the humane society. She testified that the dog was emaciated, had wounds on the hips and elbows, and was dehydrated. Dr. Haeussler believed the dog to be between 10 and 15 pounds underweight. She provided the dog with an IV to help it rehydrate, as well as the food and water described above. She noted that the dog ate and drank so quickly that it would regurgitate the food and then begin eating again. Dr. Haeussler also testified that in the 7-8 weeks the dog was under the humane society's care, it had increased its weight by 16 pounds.

{¶ 15} Farmer's mother, Tiffany Smitt, testified next. She stated that on March 4,

2013, she had brought food and water for the dog. Smitt indicated that on days when Farmer was unable to come to the residence to care for the dog, she would bring it food and water. Smitt testified that Farmer "idolized that dog" and would never be cruel to it. She further testified that the dog had access to an enclosed porch, and that the dog was provided straw to help stay warm.

{¶ 16} Farmer testified last. He stated that he had been jailed in late 2012, during which time his roommate was supposed to care for the dog. However, after being released a couple weeks prior to January, he discovered the dog was in poor condition. He stated that the original investigation into the dog's condition in January occurred only shortly after he discovered there was a problem. Farmer claimed that the dog was given food and water every day. He also claimed that he attempted to provide the dog with hay and a large foam mat to lie on, but that the dog would drag those things into the yard and tear them apart. Finally, he denied ever intentionally being cruel to the dog.

{¶ 17} The crux of Farmer's argument is that while the dog was admittedly in very poor condition, he did not create or allow that condition to continue "knowingly" as required for conviction under the relevant statute. However, "knowingly" and "intentionally" are not the same standard. According to R.C. 2901.22(B), "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 18} Farmer was aware of the dog's condition in early January of 2013 after the dog warden issued a warning and ordered that he take the dog to a vet. Over the course of the next three months, the dog's condition appeared to have worsened, or at best remained the same. The pictures of the emaciated dog introduced into evidence are undeniable. Furthermore, Farmer's claims that the dog was fed and given water daily but was unable to gain weight are contradicted by the evidence. The dog gained weight rapidly once it was

entrusted to the care of the humane society, increasing from 45.7 to 61.7 pounds in a period of less than two months.

{¶ 19} Given the ongoing condition of the dog months after having visited the veterinarian, Farmer would undoubtedly be aware that his supposed attempts to care for the dog were causing a certain result. And that result, the starvation, dehydration, and exposure during the frigid winter months, was cruel. Despite Farmer's claims that he cared for the dog, the testimony and exhibits make clear that the dog was knowingly neglected, causing unnecessary and unjustifiable suffering when reasonable relief was available if the effort was made. Accordingly, we find that the weight of the evidence supports Farmer's conviction, and cannot find that the trier of fact lost his way.

{¶ 20} In light of the foregoing, having found that Farmer's conviction was not against the manifest weight of the evidence, Farmer's sole assignment of error is overruled.

{¶ 21} Judgment affirmed.

S. POWELL and HENDRICKSON, J., concur.